UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

ENTERED
10/31/2012

| | | |
|---|---|---|
| IN RE: | § | |
| ALONZO RAMIREZ, *et al* | § | CASE NO: 11-20614 |
| Debtor(s) | § | |
| | § | CHAPTER 7 |
| | § | |
| LARRY WILSON | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 12-2006 |
| | § | |
| ALONZO RAMIREZ, *et al* | § | |
| Defendant(s) | § | |

**MEMORANDUM OPINION AND ORDER ON LARRY WILSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT (docket no. 29)**

On this day came on for consideration the Motion For Partial Summary Judgment pursuant to Rule 56(b) Fed. R .Civ. P. as made applicable to proceedings in bankruptcy pursuant to Rule 7056 Fed. Bankr. R. P. (the "Motion") filed by Larry Wilson ("Wilson"). The Court, having heard the arguments of counsel and upon review of the summary judgment evidence, finds that there are no genuine issues of material fact and partial summary judgment should be granted.  In support thereof, the finds Court as follows:

**STANDARD OF REVIEW**

In reviewing a motion for summary judgment under Fed. R. Civ. P. 56, the party seeking summary judgment carries the burden of proof. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 325 106 S.Ct. 2548, 2553-54 (1986). If the movant bears the burden of proof, a successful motion must present evidence that would entitle the movant to judgment at trial. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir.2003); *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir.2000). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine issue of

material fact. *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir.2006). The non-moving party has a duty to respond with specific evidence demonstrating a triable issue of fact. *Celotex* 477 U.S. at 325, 106 S.Ct. at 2553-54*; Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 402 (5th Cir.2005). When identifying specific evidence in the record, the non-movant must articulate how that evidence supports its position. *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir .2004).

In their Answer to the Motion for Summary Judgment (the "Answer"), Alonzo and Mary Ramirez (the "Defendants") offered no competing summary judgment evidence and failed to raise any genuine issues of material fact. Defendants verified the conclusory statements and opinions made by their counsel in their Answer and did not offer any evidence or point to any of the summary judgment evidence sufficient to raise a genuine issue of material fact. Instead, Defendants simply stated in their Answer that they "vehemently deny" the facts set forth in the Motion, which assertion does not constitute competent summary judgment evidence. Defendants "must do something more than simply show that there is metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007), citing *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Defendants, as non-movants, must produce evidence upon which this court could reasonably base a verdict in the Defendants' favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Based on the relevant case law and a review of the pleadings, Defendants failed to meet their burden.[1]

---

[1] Wilson filed a Motion to Strike Defendants' Answer, which this Court finds it need not reach based on its ruling herein.

2

## UNCONTROVERTED FACTS

On or about August 26, 2006, Wilson purchased and closed on a home located at 13538 Peseta Court, Corpus Christi, Texas 78418 ("Peseta Court" or the "Property"). Wilson paid approximately $361,000.00 in cash consideration for the purchase of the Property. Defendants resided in the Property since July 30, 1993, long prior to the sale to Wilson and had intimate personal knowledge of the condition of the Property.

Defendants made representations to Wilson, both before and after the closing, regarding the condition of Peseta Court. Jack H. Boeck ("Boeck"), a real estate inspector doing business as Boeck Inspection Company, performed the inspection of Peseta Court prior to its purchase by Wilson. Prior to the closing on Peseta Court, Wilson made specific inquiries to the Defendants including whether or not Peseta Court had ever suffered any water damage. Defendants repeatedly confirmed both verbally and in writing to Wilson that there had never been any water damage to Peseta Court. This statement proved to be materially false.

Prior to the closing on Peseta Court and in conjunction with the inducement to Wilson to purchase it, Defendants completed a "Seller's Disclosure Notice" (the "Condition Disclosure"). The Condition Disclosure contained numerous material representations concerning the condition of Peseta Court, each of which were material misrepresentations of the actual condition of Peseta Court. These misrepresentations included:

   a. that there were no previous roof repairs;

   b. that there had been no water penetration;

   c. that there was no wood rot;

   d. that there were no room additions or other alterations made or constructed without the proper permits;

   e. that there were no conditions materially affecting the health or safety of an occupant of

3

the property; and

      f.   that there were no repairs or treatments to remediate environmental hazards such as mold.

The Condition Disclosures cited above represent false statements of material fact. Peseta Court had suffered substantial water damage and mold infestation which the Defendants knew had occurred and for which they made two insurance claims. Defendants were paid almost $40,000.00 on those claims but never made the repairs. Instead, Defendants physically covered-up the damage.

Notwithstanding the actual knowledge of the Defendants, they represented to Wilson that there had been no water damage to Peseta Court. The making of these false statements of material fact, and the duplicitous attempts to conceal the falsity of them, represents very substantial proof of Defendants' liability for intentional or knowing deceptive trade practices, and for fraud.

Defendants knew and expected or could easily foresee that the representations made on the Condition Disclosures would be relied upon by Wilson. Defendants knew that the representations materially misrepresented the actual condition of Peseta Court. Defendants knew that the Condition Disclosures were false and materially misleading.  Because of the material misrepresentations and active concealment by the Defendants of the material defects in Peseta Court, Boeck, in the course of the inspection of Peseta Court, failed to find numerous defects, including, but not limited to:

    a. damage and mold caused by chronic water leaks;

    b. damage and mold caused by chronic water penetration;

    c. prior repairs and latent damage to the roof structure;

If truthful disclosures had been made, Wilson and Boeck would have been afforded adequate opportunity to perform an inspection properly. Had the Defendants not knowingly and intentionally concealed the defects, Wilson would have learned of the substantially defective condition of Peseta Court prior to the consummation of the purchase and payment of valuable consideration by Wilson

to the Defendants. With knowledge of the actual condition of Peseta Court, Wilson would have had the opportunity to either decline to purchase Peseta Court or negotiate a different purchase price that reflected the actual value of Peseta Court.

On or about September 13, 2006, after the closing, when Wilson sought to insure Peseta Court, he discovered two insurance claims by the Defendants on Peseta Court for water damage and ensuing mold and rot caused by roof leaks and air conditioner leaks. The claims resulted in payments of approximately $19,016.00 and $17,646.00 for water damage, mold, and rot to the Defendants. Based upon the condition of Peseta Court as discovered at substantial cost to Wilson following the closing, it is clear that the insurance funds received by the Defendants were not used to repair the damage caused by the water penetration. The passage of time following the water damage claims resulted in significant progression of the pre-existing mold and rot damage to Peseta Court. Furthermore, despite the specific request by Wilson, neither the claims nor the basis for the claims were disclosed to Wilson prior to the purchase of Peseta Court, or even after the purchase when Wilson confronted the sellers with the information he learned about the previous water damage claims.

Wilson has expended substantial sums to uncover and repair the concealed defects and for attorneys to assist in discovering and documenting the damages that result from the deception and fraud of Defendants. Defendants knew of each of the water leaks (including chronic roof leaks and leaks from the A/C handler) and resultant water damage, and of the insurance claims to recover for the repairs of the sources of water leaks and resultant water damage, rot and mold. Defendants knew that they had not repaired the leaks. The Defendants were specifically offered "alternative living expenses" by the insurance company so they could relocate during the required repairs, but because they never moved out they did not collect that benefit. This demonstrates that the Defendants knew they did not perform the repairs that were required, for which they were paid almost $40,000.00.

5

Defendants knowingly and intentionally failed to disclose the defective conditions and actively concealed the defects from Wilson, to his financial detriment.

During the pendency of litigation, the Defendants repeatedly testified regarding "repairs" to the home, only to have those "repairmen" testify that they were not asked to make such repairs and were not qualified to make them. When confronted with the repairmen's testimony, Defendants testified that they could not name any person who actually "repaired" the conditions that the insurance company paid them to make. The evidence establishes that no repairs were made (other than cosmetic repairs intended to hide the damage), and that the Defendants knew this before the sale. Defendants simply replaced the roof tiles and interior walls and covered the defects, keeping the balance of the insurance proceeds for themselves and selling the defective home to Wilson through fraud and deceit. Wilson continued during litigation to discover new areas of water penetration and the resulting damage to Peseta Court. Wilson has continued to make repairs to Peseta Court.

Wilson's summary judgment evidence establishes that many more repairs are required to put the Property in the condition in which it was represented to be prior to the closing. The summary judgment evidence demonstrates that Defendants knowingly and intentionally made materially false representations to Wilson regarding the status, quality and condition of Peseta Court for the purpose of inducing Wilson to purchase Peseta Court for a value substantially in excess of the actual value thereof. Moreover, Defendants false representations prevented Boeck from making a thorough inspection.

As a direct result of the failure of Defendants to disclose the actual condition of Peseta Court to Wilson, he was and will continue to be required to remediate the materially defective condition of Peseta Court that was concealed. Wilson paid $361,000.00 for a home that is appraised at a value, as of closing, of $220,000.00, resulting in diminution in value damages of $141,000. The out of pocket

6

expenditures by Wilson to remediate the sources of leaks and other defective conditions total $146,262.00 ($81,700 repairs already completed, + $52,419 future repairs + $9,142 painting after repairs completed + $3,001 landscape repairs).

Wilson filed suit against the Defendants and the other parties on March 25, 2008, in the 319th Judicial District Court of Nueces County, Texas under cause number 08-1525-G (the "State Court Lawsuit"). The State Court Lawsuit was set for trial in October, 2011, Defendants filed their Chapter 7 Proceeding on the Friday before the trial for the stated purpose of "putting an end" to the State Court Lawsuit.

## DISCUSSION

### A. LIQUIDATION OF THE CLAIM OF WILSON IS WITHIN THE JURISDICTION OF THIS COURT

In order for a plaintiff to successfully challenge the dischargeability of a claim asserted against a debtor, the plaintiff must first establish that he has a valid claim against the debtor. A "debt" is defined in the Code as "liability on a claim". See, 11 U.S.C. §101(12). A "claim" is defined in turn as a "right to payment". See, 11 U.S.C. §101(5)(A). A "right to payment" has been defined as "nothing more nor less than an enforceable obligation." See, *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 559, 110 S.Ct. 2126, 2131, 109 L.Ed.2d 588 (1990). The validity of a plaintiff's claim is determined by the rules of state law. *Grogan*, 498 U.S. 279, 283-4, 111 S.Ct. at 655 (citing *Vanston Bondlholders Protective Comm. v. Green*, 329 U.S. 156, 161, 67 S.Ct. 237, 239 (1946).

This Court has the authority hear and finally determine whether Wilson's claim is excepted from discharge by 11 U.S.C. §§523(a)(2)(A) even if the Court is required to first liquidate the claim in the process. *In re Morrison,* 555 F.3d 473, 478–79 (5th Cir.2009).

7

**B. BURDEN OF PROOF ON THE DTPA CLAIMS**

   **1. Generally**

Wilson alleges that the Defendants violated the DTPA, including sections 17.46(b)(2), (5), (7), (13) and (24). Proving a violation of the DTPA requires a plaintiff to meet a three-part test. First, the plaintiff must be a consumer. Second, the defendant must have committed, among other things, a "laundry-list" violation under section 17.46(b) on which the plaintiff detrimentally relied. Third, the wrongful act must be a producing cause of the plaintiff's economic or mental anguish damages. See, *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 478 (Tex.1995); *Wall v. Parkway Chevrolet, Inc.,* 176 S.W.3d 98, 105 (Tex. App.-Houston [1st Dist.] 2004). Wilson also seeks treble damages for any sums awarded as a result of the DTPA violations as provided for in Tex. Bus. & Com. Code Ann. § 17.50 (West 2007).

   **2. Requirement for a "Laundry List" Violation**

Section 17.46(a) of the DTPA provides that "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division...." Subsection (b) then defines certain specific acts as "false, misleading, or deceptive". Included in the "laundry list" of prohibited acts are:

   i. causing confusion or misunderstanding as to the source, sponsorship, approval or certification of goods (Tex. Bus. & Com. Code Ann. § 17.46(b)(2) (West 2007);

   ii. representing that good or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . (Tex. Bus. & Com. Code Ann. § 17.46(b)(5) (West 2007);

   iii. representing that goods or services are of a particular standard, quality, or grade . . . (Tex. Bus. & Com. Code Ann. § 17.46(b)(7) (West 2007);

8

iv. knowingly making false or misleading statements of fact concerning the need for parts, replacements, or repair service (Tex. Bus. & Com. Code Ann. § 17.46(b)(13) (West 2007); and

v. failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed. (Tex. Bus. & Com. Code Ann. §17.46(b)(24) (West 2007).

Relevant to the analysis is the Texas Supreme Court's determination that oral misrepresentations concerning the terms of a written contract are actionable under the DTPA. *See, e.g. In re Carroll,* 464 B.R. 293, 327 (Bankr. N.D.Tex. 2011) (citing *Best v. Ryan Auto Group, Inc.,* 786 S.W.2d 670, 671–72 (Tex.1990).

### 3. Producing Cause

Within the meaning of the DTPA, a "producing cause" of an injury is an efficient, exciting or contributing cause that in the natural sequence of events produces injuries or damages. See, *In re Carroll*, 464 B.R. 293, 328-29 (citing *Ibarra v. Nat'l Construction Rentals, Inc.,* 199 S.W.3d 32, 35 (Tex.App.-San Antonio 2006). "Producing cause requires that the act be both a cause in fact and a substantial factor in causing the plaintiffs injuries." *Id*.; *Brown v. Bank of Galveston, Nat. Ass'n*, 963 S.W.2d 511, 514 (Tex.1998).

Defendants allege that because Wilson obtained an inspection of the Property prior to purchase, he cannot recover from Defendants for damage they claim the inspector should have found. When a buyer's independent investigation fails to uncover facts which contradict representations made by the seller, or they reveal something that would lead a buyer to believe a seller's statements were untrue, the buyer is not prevented from relying upon sellers statements. *See, e.g., Gaston v. Woodmen of World Life Ins. Soc.,* 167 S.W. 2d 263, 266 (Tex.Civ.App.—Fort Worth, writ dism'd). "The mere fact that one makes a personal investigation, or consults with others, or has other sources of information open to him, does not necessarily show that he relied on such personal investigation, or the information gained

9

therefrom, or through other sources." *Durham v. Wichita Mill & Elevator Co.,* 202 S.W. 138, 142 (Tex.Civ.App.—Fort Worth 1918, writ ref'd). The "possibility of an independent investigation that might have uncovered fraud does not preclude recovery for fraudulent representations" and Wilson's inspection was not a defense to his misrepresentation claim. *Kessler v. Fannig*, 953 S.W.2d 515, 519 (Tex.App.—Fort Worth 1997, no writ)."Texas courts have found that a seller's misrepresentations can be a producing cause of a buyer's injury even when the buyer has conducted an independent investigation." *Chesapeake Exploration, L.L.C. v. Dallas Area Parkinsonism Society, Inc.*, 2011 WL 3717082, *6 (Tex.App.—Amarillo).

### 4. Damages

"A successful Texas Deceptive Trade Practice Act plaintiff may recover under either the out-of-pocket rule or the benefit of the bargain rule." *Coghlan v. Wellcraft Marine Corp*., 240 F.3d 449, 453 (5th Cir. 2001). Discussing Texas law on calculation of damages for DTPA violations, the Court in *Blacksotck v. Dudley*, 12 S.W. 3d 131, 135 (Tex.App.—Amarillo 1999) stated as follows:

> It is axiomatic that Texas law does not permit a double recovery. Successful DTPA plaintiffs who are entitled to actual damages for misrepresentation may elect to receive either out-of-pocket damages or benefit of the bargain damages. Because the two are essentially different measures of the same thing, to receive both would amount to a double recover. The Texas Supreme Court has defined out-of-pocket damages a being "the difference between the value of that which was parted with and the value of that which was receive," and benefit of the bargain damages as being "the difference between the value as represented and the value actually received."

- - *Id*. (citations omitted).

Based on Texas law, Wilson may either recover the cost of repairs for the Property or the difference in the value paid and the actual value at time of purchase, whichever is greater. *Id.* In the case at bar, the out-of-pocket cost of repairs is greater than the diminution in value and therefore Wilson is entitled to actual damages in the amount of $146,262.00.

The damages recoverable in a DTPA action consist of both actual and exemplary damages. Upon the liquidation of the economic damages defined under the DTPA as "compensatory damages for pecuniary loss, including costs of repair and replacement", the Court must thereafter determine whether the multiple or exemplary damages available under the DTPA are warranted. "The Texas Supreme Court has held that the maximum amount of damages for a knowing violation of the DTPA is three times the actual damages." *In re Carroll*, 464 B.R. 293, 229 (Bankr. N.D.Tex. 2011); *citing*, *Jim Walter Homes, Inc. v. Valencia,* 690 S.W.2d 239, 241 (Tex.1985); Tex. Bus. & Com.Code Ann. § 17.50(b)(1) (West 2005)(emphasis added).

The Court, having found that Wilson suffered actual damages assessable under the DTPA, *may*, upon a finding that the violations were "knowingly" or "intentionally" made, treble the damage award. See, *In re Carroll*, 464 B.R. at 329-30 (Bankr. N.D. Tex. 2011). However, the DTPA does not require an award of treble damages and any exemplary damage award is in the Court's discretion. *Boat Superstore, Inc. v. Haner*, 877 S.W.2d 376, 380 (Tex.App.-Hous. [1st Dist.] 1994); *In re Melchor*, 2011 WL 1600570 *4 (Bankr. S.D. Tex. 2011). Wilson's complaint for exemplary damages was not a part of his partial motion for summary judgment and the Court will reserve that issue for trial.

## C. VIOLATION OF 11 U.S.C. §523(a)(2)

### 1. Burden Of Proof - Generally

The burden of proof of a plaintiff in an objection to the dischargeability of a particular debt was settled by the United States Supreme Court in *Grogan v. Garner*, 498 U.S. 279, 287 111 S.Ct. 654, 659-60 (1991). The *Grogan* Court reasoned that the preponderance of the evidence standard was the applicable burden of proof. In analyzing the standard of proof Justice Stevens opined:

> "Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless "particularly important individual interests or rights are at stake." (internal citations omitted). We have previously held that a debtor has no

11

> constitutional or "fundamental" right to a discharge in bankruptcy.(internal citations omitted)… Requiring the creditor to establish by a preponderance of the evidence that his claim is not dischargeable reflects a fair balance between these conflicting interests."

- -*Grogan*, 498 U.S. 286-87, 111 S.Ct. 659.

### 2. Elements Of Fraud Under 11 U.S.C. §523(a)(2)(A)

Fraud actionable under §523(a)(2)(A) is the "positive" type of fraud as opposed to constructive fraud. See, *In re Mercer*, 246 F.3d 391, 407 (5th Cir. 2001) (citing *Ames v. Moir*, 138 U.S. 306, 311, 11 S.Ct. 311, 34 L.Ed. 951 (1891)). The Fifth Circuit in *Mercer* reasoned that "[t]he appropriate focus with respect to a debtor's intent is whether she acted in bad faith by knowingly making a false representation." *Id.* Actual fraud, by definition, consists of "any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another - - something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." 3 Collier on Bankruptcy ¶ 523.08[1][e], at 523-45 (15h Ed.)(footnote omitted). In order to prove nondischargeability under an "actual fraud" theory, the objecting creditor must prove that: "(1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained losses as a proximate result of the representations." See, *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995) (citing *In re Roeder*, 61 B.R. at 181, quoted in *In re Bercier*, 934 F.2d at 692); see also *In re Acosta*, 406 F.3d 367, 372 (5th Cir. 2005); *In re Mercer*, 246 F.3d 391, 403 (5th Cir. 2001).

A representation need not be spoken, but may be made through conduct including silence and concealment. *Mercer, supra* at 404 (citing RESTATEMENT (SECOND) OF TORTS, §§550, 551). "A misrepresentation is fraudulent if the maker ... knows or believes ... the matter is not as" represented, or "does not have the confidence in the accuracy of his representation" as stated or implied, or "knows ...

he does not have the basis for his representation" as stated or implied. Restatement (Second) of Torts § 526 (emphasis added). See, *Mercer* at 407. A debtor's intent to deceive may also be inferred from "reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation." See, *Acosta* at 372 (citing *In re Norris*, 70 F.3d 27, 30 n. 12 (5th Cir.1995) and *In re Miller*, 39 F.3d 301, 305 (11th Cir.1994)).

The "standard of actual reliance requires little of the creditor"; it must only prove that it "in fact relied upon the representations of the debtor". See, *Mercer* at 413 (citing *City Bank & Trust Co. v. Vann (In re Vann)*, 67 F.3d 277, 284 (11th Cir.1995). It is sufficient that the representation was a substantial factor in influencing the decision that resulted in the damage sustained by the plaintiff. RESTATEMENT (SECOND) OF TORTS §546 cmt. b. The United States Supreme Court in *Field v. Mans* established the level of reliance required in a §523(a)(2)(A) cause of action:

> "Following our established practice of finding Congress's meaning in the generally shared common law when common-law terms are used without further specification, we hold that § 523(a)(2)(A) requires justifiable, but not reasonable, reliance."

- - *Field v. Mans*, 516 U.S. 59, 73-75, 116 S. Ct. 437, 445-46, (1995) (citing *In re Vann*, 67 F.3d 277 (11th Cir. 1995); *In re Kirsh*, 973 F.2d 1454 (C.A.9 1992)).

**3. Damages Resulting From Violation Of The Texas Deceptive Trade Practices Act Are Non-Dischargeable**

As noted above, the Fifth Circuit utilizes a five-part test for determining nondischargeability under section 523(a)(2)(A). *See In re Acosta*, 406 F.3d 367, 372 *(5th Cir. 2005); RecoverEdge, L.P. v. Pentecost,* 44 F.3d 1284, 1293 (5th Cir.1995). The elements of section 523(a)(2)(A) may be satisfied through a DTPA violation. *In re Carroll*, 464 B.R. 293, 331-33 (Bankr. N.D. Tex. 2011).

### 4. Exemplary Damages and Attorneys' Fees Are Non-Dischargeable

If a plaintiff in a non-dischargeability action sounding in actual fraud is entitled to the recovery of treble damages and attorneys' fees under applicable state law, the award of treble damages and attorneys' fees is, likewise, non-dischargeable under 11 U.S.C. §523(a)(2)(A). See, *Cohen v. de la Cruz*, 523 U.S. 213, 223, 118 S.Ct. 1212, 1219 (1998). In considering whether the award of treble damages and attorneys' fees by a bankruptcy court in a complaint brought under 11 U.S.C. §523(a)(2)(A) was appropriate, Justice O'Connor, writing for a unanimous Court opined:

> "The most straightforward reading of §523(a)(2)(A) is that it prevents discharge of "any debt" respecting "money, property, services, or ... credit" that the debtor has fraudulently obtained, including treble damages assessed on account of the fraud. [T]he phrase "to the extent obtained by" in § 523(a)(2)(A), . .., does not impose any limitation on the extent to which "any debt" arising from fraud is excepted from discharge. "[T]o the extent obtained by" modifies "money, property, services, or ... credit"-not "any debt"-so that the exception encompasses "any debt ... for money, property, services, or ... credit, to the extent [that the money, property, services, or ... credit is] obtained by" fraud. The phrase thereby makes clear that the share of money, property, etc., that is obtained by fraud gives rise to a nondischargeable debt. Once it is established that specific money or property has been obtained by fraud, however, "any debt" arising therefrom is excepted from discharge."

- - *Cohen v. de la Cruz*, 523 U.S. at 218; 118 S.Ct. at 1216 (1998)(citations omitted).

Under Cohen, "any debt ... for money, property, services, or ... credit, to the extent obtained by" fraud encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor". *Cohen v. de la Cruz*, 523 U.S. at 223, 118 S.Ct. at 1219. If the Court awards exemplary damages at trial, they are not dischargeable.

14

## **CONCLUSION**

The uncontroverted summary judgment evidence establishes each of the elements of a knowing and intentional violation of the DTPA which evidence, in turn, satisfies each of the elements necessary to render Wilson's DTPA claim non-dischargeable under 11 U.S.C. §523(a)(2)(A). Based upon the summary judgment evidence, there are no genuine issues of material fact as to any element on which Wilson bears the burden of proof and partial summary judgment is appropriate on the issues presented. Actual out of pocket damages in the amount of $146,262.00, are owed by Defendants to Wilson and are declared non-dischargeable. Wilson did not request summary judgment on his claim for exemplary damages or imposition of a constructive trust and the Court reserves ruling thereon pending further hearing and subject to this Court's Order requesting additional briefing on Wilson's Objection to Exemptions in the main bankruptcy case.

It is so ORDERED.

SIGNED 10/31/2012.

_____
RICHARD S. SCHMIDT
UNITED STATES BANKRUPTCY JUDGE